UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

---

In re

    IANNOPOLLO ASSOCIATES,

        Debtor.

Case No: 14-20045(PRW)

Chapter 11

## BENCH DECISION AND ORDER
## ON MOTION TO TERMINATE EXCLUSIVITY
## AND CROSS-MOTION TO EXTEND EXCLUSIVITY
## PURSUANT TO 11 U.S.C. § 1121(d)

PAUL R. WARREN, United States Bankruptcy Judge

Before the Court is a Motion Seeking an Order Terminating Debtor's Exclusivity Period ("Motion to Terminate Exclusivity"), brought by New York Business Development Corporation ("NYBDC"), the secured creditor in this Chapter 11 proceeding. Also before the Court is a Cross-Motion to Extend the Exclusivity Period ("Cross-Motion to Extend") brought by Iannopollo Associates ("Debtor"), a single-asset real estate partnership, in opposition to the NYBDC Motion. The Motion and Cross-Motion are both brought pursuant to 11 U.S.C. §1121(d).

The Motion to Terminate Exclusivity was served and filed by NYBDC on March 24, 2014 (ECF DCKT #25 and #26). The Debtor's Opposition to the Motion to Terminate Exclusivity and Cross-Motion to Extend the Exclusivity ("Cross-Motion") was served and filed on April 11, 2014 (ECF DCKT # 31). A Reply in further support of the Motion and in

1

Opposition to the Cross-Motion to Extend the Exclusivity Period was served and filed by NYBDC on April 14, 2014. (ECF DCKT #32 and #33).

The following Bench Decision constitutes this Court's findings of fact and conclusions of law, by which the Court determines that (1) the Motion to Terminate Exclusivity by NYBDC is **DENIED** and (2) the Cross-Motion to Extend Exclusivity by the Debtor is also **DENIED.**

## I.
## FINDINGS OF FACT

On January 15, 2014, the Debtor filed a Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code. The Debtor, a single asset real estate partnership, owns approximately 151 acres of land, located in Geneva, New York. The Debtor values the property for $1,510,000 on Schedule A, subject to secured claims totaling approximately $590,000. The Seneca Lake Country Club and Golf Course is located on the property, which is operated by a separate legal entity, Iannopollo Enterprises, Inc., apparently pursuant to a lease agreement— which the Debtor alleges to have no value.

On Schedule D, the Debtor lists two secured creditors: NYBDC, with a secured claim of approximately $445,000, and the Ontario County Treasurer, with a secured claim arising from the non-payment of property taxes, from 2011 through 2014, of approximately $145,345.

The Debtor indicates on Schedule E that there are no creditors holding unsecured priority claims. The Debtor indicates on Schedule F, that there are no creditors holding unsecured non-priority claims. It appears that the Debtor's only creditors are NYSBDC and Ontario County, both fully secured and in fact significantly over secured (ECF DCKT #10).

2

The Debtor's 120-day exclusivity period to file and seek confirmation of a plan ends May 15, 2014.

In the Motion to Terminate Exclusivity, NYBDC asserts that, in addition to Ontario County's tax claim, it is the Debtor's only creditor. NYBDC urges that, with the golf season approaching, and given that this Chapter 11 case is "essentially a two party dispute," NYBDC should not be prevented from proposing a plan of reorganization to promote a prompt resolution of this case.

NYBDC asserts that it is the holder of a Note from the Debtor, and its principals, John M. Iannopollo and Margaret V. Iannopollo, dated September 10, 2007, in the amount of $550,000, with interest ("Note"). The Note is merged with a Demand Note dated September 10, 2007, in the original principal amount of $319,101.88. The Note is secured by a Mortgage and Agreement and Loan and Security Agreement, both dated September 10, 2007 ("Mortgage").

NYBDC asserts that due to a serious default in payments under the Note and the Debtor's failure to pay real estate taxes, NYBDC commenced a foreclosure action. NYBDC states that it attempted to enter into a forbearance agreement with the Debtor, to afford the Debtor the opportunity to operate through the 2014 golf season, with payment expectations typical of such arrangements, but the Debtor instead sought protection under the Bankruptcy Code.

NYBDC requests that this Court enter an order, pursuant to § 1121(d) of the Bankruptcy Code, terminating for "cause" the Debtor's exclusive 120-day period to file a plan of reorganization and to solicit acceptances of the plan. NYBDC argues the nine factors

identified by the Court in Adelphia Communications Corp., 352 BR 578 (Bankr. S.D.N.Y. 2006), in applying § 1121(d) of the Code ("Adelphia factors"), weigh in favor of the Court finding "cause" to terminate the Debtor's exclusive right to file an plan of reorganization during the 120-days following the entry of the Order for Relief.

In Opposition to the NYBDC Motion, the Debtor has cross-moved to extend its exclusive period to file a Plan, pursuant to § 1121(d), seeking an additional 120-day period of exclusivity. The Debtor argues that the nine Adelphia factors weigh against the NYBDC Motion to Terminate the Exclusivity Period and weigh in favor of granting an extension of the Debtor's exclusivity period for an additional 120-days beyond May 15, 2014.

The Debtor agrees that there are only two secured creditors in this case, NYBDC and Ontario County Treasury, and concedes that each creditor is significantly over-secured. The Debtor asserts that it commenced this case in order to prevent the involuntary transfer of the real estate to Ontario County for delinquent taxes, a transfer that would have resulted in NYBDC losing its security interest in the property. Instead, the Debtor states its intention to cure pre-petition tax arrears through an eventual Chapter 11 plan.

The Debtor asserts that since the date of filing the petition, it has remained current on the payment of all post-petition expenses and has filed all monthly operating reports to date. Additionally, the Debtor asserts that no real estate taxes will come due until the fall of 2014, and that insurance payments are current. The Debtor intends to pay those post-petition taxes on time and in full when they become due.

The Debtor repeatedly notes that due to the severe winter weather conditions experienced, the Seneca Lake Country Club that operates the golf course on the Debtor's property has not yet been able to open.

The Debtor requests that the Court deny the Motion to Terminate Exclusivity and grant its Cross-Motion to Extend the Exclusive Period for an additional 120-days, to September 12, 2014, so that it may open for the golf season, and gauge if revamped operations will be sufficient going forward to cure the defaults to NYBDC.

## II.
## CONCLUSIONS OF LAW

This Court has jurisdiction over this matter, pursuant to 28 U.S.C. §§ 157 and 1334. This Motion is a "core" proceeding, as defined under 28 U.S.C. § 157(b)(2).

For the reasons which follow, this Court finds that cause, as required by § 1121(d) of the Code, has not been established by either NYBDC or the Debtor, to support either an order to terminate or an order to extend the exclusivity period for the filing of a Chapter 11 plan.

11 U.S.C. § 1121(b) of the Code provides that, "Except as otherwise provided in this section, only the debtor may file a plan until after 120-days after the date of the order for relief under this chapter."

11 U.S.C. § 1121(c) of the Code further provides:

Any party in interest, including the debtor, the trustee, an creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may file a plan if and only if—

1) A trustee has been appointed under this chapter;

2) The debtor has not filed a plan before 120-days after the date of the order for relief under this chapter; or

3) The debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief under this chapter, by each class of claims or interests that is impaired under the plan.

Consequently, the Debtor in a Chapter 11 case enjoys a 120-day exclusive period during which only the Debtor may file a Chapter 11 plan. However, § 1121(d)(1) of the Code provides that the court may, for cause, reduce or increase the debtor's 120-day exclusivity periods. "The decision to extend or terminate exclusivity for cause is within the discretion of the Bankruptcy Court, and is fact specific. The elements that constitute "cause" are not specified by § 1121(d) of the Code, but Courts within the Second Circuit have identified factors to be considered when determining whether "cause" exists to reduce or increase a Debtor's exclusivity period." R.G. Pharmacy, 374 BR 484, 487 (Bankr. Ct. 2007), citing Adelphia, supra. Both NYBDC and the Debtor, in the Motion and Cross-Motion, focus on the nine fact-specific Adelphia factors, namely:

1) the size and complexity of the case;

2) the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;

3) the existence of good faith progress toward reorganization;

4) the fact that the debtor is paying its bills as they become due;

5) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

6) whether the debtor has made progress in negotiations with its creditors;

7) the amount of time which has elapsed in the case;

8) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

9) whether an unresolved contingency exists. Id. at 587.

## Termination of Exclusivity—Showing Required

The Adelphia Court observed that the primary consideration or test in determining whether to terminate exclusivity is "better expressed as determining whether terminating exclusivity would move the case forward materially, to a degree that would not otherwise be the case." Id. at 590. "Practical considerations, or considerations in the interests of justice could override, in certain cases, the result after analysis of the nine factors." Id.

However, "cause to reduce the exclusivity period," particularly during the initial exclusivity period, "should only be found in extraordinary circumstances," and the party

7

seeking to reduce the exclusivity period bears a heavy burden of proof. See Energy Conversion Devices, Inc., 474 BR 503, 508 (Bankr. E.D.Mich. 2012).

A party seeking to terminate exclusivity during the initial period of exclusivity must show "some conduct by the Debtor that is short of conduct that would justify the appointment of the trustee, but, still, troubling conduct [such as] the debtor's inability to negotiate a plan due to internal conflicts, or is mismanaging the bankruptcy case short of the need to replace management, or is using exclusivity in a way that Congress did [not] contemplate." Excel Maritime Carriers, Ltd., 2013 WL 5155040 at *1 (Bankr. S.D.N.Y. 2013). "The mere fact that key players want to file a competing plan is not sufficient cause to terminate a debtor's exclusive periods." Id.

### Extension of Exclusivity-Showing Required

Where a debtor seeks the extension of its exclusivity period, it has the burden to demonstrate the existence of cause. R.G. Pharmacy, Inc., 374 BR 484, 487 (Bankr. D. Conn. 2007). The debtor, in seeking the extension, must make "an affirmative showing of "cause," [as] supported by evidence." Id. The Court must consider whether an "extension of exclusivity will facilitate moving the case forward," while "balancing the harm the extension will cause to creditors." Friedman's, Inc., 336 BR 884, 889 (Bankr. S.D. Georgia 2005).

Where the debtor's bankruptcy case is not particularly large, the debtor has few major creditors, and there is a breakdown of negotiations between the debtor and objecting creditors, it is unlikely that a requested extension is going to significantly improve progress toward an effective reorganization. See R.G. Pharmacy, Inc., 374 BR 484 (Bankr. D. Conn.

8

2007) (holding that such facts implicate Adelphia factors (2), (3), (5), (6), and (9); compare Lichtin/Wade, 478 BR 204 (Bankr. E.D. N.C. 2012), (holding that the size of a single asset real estate debtor's case, with numerous creditors, as well as the complexity of the case, debtor's good faith progress toward reorganization by filing a proposed Plan, significant progress in negotiations, and paying its bills as they became due, all weighed in favor of finding cause to extend the exclusivity period).

The nature of a Debtor's business being highly seasonal is not alone "sufficient to grant an extension of the length" of the exclusivity period. Friedman's, Inc., 336 BR 884, 889 (Bankr. S.D. Georgia 2005) (holding that where Debtors' highly complex seasonal retail business, employing over 4,500 employees in 650 stores, located in 22 states, with a troubled past which included a governmental investigation, new management, and specialized inventory needs, combined to demonstrate cause for extension of the exclusivity period); see also Service Merchandise Company, Inc., 256 BR 744 (Bankr. M.D. Tennessee 2000) (granting an extension of the exclusivity period where the case was large and complex, the debtor's business was highly seasonal, the debtors depended upon good vendor relations that could erode were the period not extended, the debtors had a focused plan, the extension was not sought for an improper purpose, and was in the best interest of the Estate).

## Adelphia Factors Applied

The Court has carefully reviewed the papers of both parties and in reaching its conclusion, and has weighed the polar-opposite conclusions reached by the parties when applying the nine Adelphia factors to the facts of this Chapter 11 case.

9

Under the first <u>Adelphia</u> factor, **the size and complexity of the case**, NYBDC argues that, with only two secured creditors and the value of the Debtor's property greatly exceeding the value of the two secured claims, this case is straightforward and calls for an expedited resolution. The Debtor argues that the fact that there are only two secured creditors, each over secured, with all post-petition payments to NYBDC being current, weighs in favor of the Court granting an extension of time, in order for the operating entity of the golf course to open and operate from the spring through fall season. The Court recognizes that this is a relatively small and seemingly uncomplicated case, which does not weigh in favor of granting the Debtor an extension of exclusivity. The lack of complexity does not, however, tip this factor in favor of the extraordinary relief of terminating exclusivity during the initial 120-day period of exclusivity.

Under the second <u>Adelphia</u> factor, the **necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information,** NYBDC argues that the necessity of time weighs in favor of terminating exclusivity, as the Debtor needs to engage merely in limited negotiations with only NYBDC. The Debtor argues that, with the golf course not being able to open yet due to the severe winter weather conditions, a situation facing "all golf courses in Upstate New York," it should be given sufficient time to assess whether "revamped operations" will be sufficient to cure its default, as well as continue to seek a lender or partner to refinance the secured debt. In reply, NYBDC argues that the debtor operated the same property for almost 23 years, and should be able to use historical data and information to aid in formulating a plan.

10

The Court recognizes that the Debtor is within the initial 120-day exclusivity period to file a proposed plan. The Debtor should be given an opportunity to file a plan without creditor interference during the initial period of exclusivity, on the facts of this case. However, recognizing the fact that the Debtor has operated the same property for almost 23 years, and given the total absence of evidence of how operations have been "revamped," as compared to prior years, this factor weighs against an extension of the exclusivity period.

Under the third Adelphia factor, **the existence of good faith progress toward reorganization,** NYBDC argues that although the Debtor's Chapter 11 case was commenced only 68 days from the filing of its Motion, the Debtor has not proposed a sale of the property, a deadline to refinance or restructure the NYBDC loan to expedite the resolution of this case. In other words, the Debtor has done nothing to advance the case. The Debtor argues that it has been denied any ability to gauge revamped operations due to severe weather, and that it filed this case in order to prevent the transfer of its real estate that would have caused NYBDC to lose its security interest in the property. In reply, NYBDC asserts that the Debtor has not proposed in any detail its plans for "revamped operations," and that the Debtor is merely trying to gain more time to operate under Court protection without moving ahead with a plan of reorganization. The Court agrees that the Debtor has not provided any indication of progress with regards to a proposed plan, or any evidence as to what the revamped operations entail. Without information on the progress towards reorganization, this factor weighs against granting the Debtor an additional 120-days of exclusivity, particularly where the initial period of exclusivity has not yet been reached. In effect, the Debtor seeks to operate

under the exclusivity provision of § 1121 of the Code for the entire 2014 golf season, in a single-creditor, fairly simple, single asset case.

Under the fourth Adelphia factor, **the fact that the debtor is paying its bills as they become due,** NYBDC argues that there were no operating costs or disbursements for January and February 2014, to demonstrate any change in the Debtor's ability to pay its bills, and delay of a proposed plan will only allow further tax arrears to accumulate, further prejudicing NYBDC. The Debtor argues that there has been no allegation that it is delinquent in any post-petition obligations, and intends to remain current and pay any taxes as they become due. Without any allegation that the Debtor is not current in making its post-petition payments, this factor weighs against NYBDC. However, in light of the fact that the Debtor has not been operational since this case was filed, the Debtor has few if any bills to pay, making this factor not particularly useful in this case.

Under the fifth Adelphia factor, **whether the debtor has demonstrated reasonable prospects for filing a viable plan,** NYBDC argues that the Debtor has not given NYBDC any indication of a proposed plan or negotiated its terms. The Debtor argues that with only 68 days having elapsed since the filing of this case, it should be given an opportunity to open for the season. Further, the Debtor notes that the secured creditors have a large equity cushion to protect their claims. The Court agrees that the Debtor has not provided any indication of a proposed plan or even generally described steps taken to revamp operations. Although the Debtor indicates that it intends to protect all creditors' claims, absent any evidence supporting the Debtor's claims, this factor weighs against granting the Debtor an extension of the 120-day period of exclusivity. Having been in the business of operating a golf course for over two-

decades, the Debtor's need for an entire golf season to make critical business decisions rings hollow.

Under the sixth Adelphia factor, **whether the debtor has made progress in negotiations with its creditors,** NYBDC argues that the Debtor has not engaged in any negotiations with NYBDC since filing this case. The Debtor argues that it tried many times to discuss a reasonable plan of repayment with NYBDC without a Chapter 11 filing, but was not given any option but to file the Chapter 11. Further, the Debtor notes that it is not contemplating impairing NYBDC; therefore there is little to negotiate with NYBDC. Simply put, the Debtor acknowledges that it has not had post-petition negotiations with NYBDC. The absence of any negotiations between the Debtor and NYBDC tips this factor against granting the Debtor an extension of exclusivity.

Under the seventh Adelphia factor, **the amount of time which has elapsed in the case,** NYBDC acknowledges that although the case is in a fairly early stage, the Debtor is already over half-way through its exclusivity period and this case is straightforward. The Debtor argues that this case is still within the original exclusivity period, and the Debtor intends to bring an application to appoint a Realtor in the near future. The Court recognizes that the Debtor is still within its 120-day statutory exclusivity period, and therefore this factor must weigh against granting NYBDC's request to terminate exclusivity. However, this factor also weighs against the Debtor's request to grant an additional 120-day period of exclusivity, given the absence of any evidence to support the request. Again, the repeated refrain of blaming the weather does not make this small, uncomplicated, single asset case something it is not.

13

Case 2-14-20045-PRW    Doc 49    Filed 04/17/14    Entered 06/18/14 15:25:38    Desc Main
Document      Page 13 of 17

Under the eighth Adelphia factor, **whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands,** the Court finds that this factor is inapplicable to this case, as acknowledged by both NYBDC and the Debtor.

Under the ninth Adelphia factor, **whether an unresolved contingency exists,** the Debtor argues that its inability to put into action its "revamped operations" due to the severe winter weather is an unresolved contingency, and asks the Court for the entire golfing season to see if a cure plan is possible. The Debtor does not dispute that a liquidation plan might be the only viable option, but asserts that it is too early to make that decision in light of the Debtor's good faith efforts to date and the severe weather. The Court recognizes the seasonal nature of the Debtor's business, but without anything other than a wait-and-see proposal, this factor does not weigh in favor of granting the Debtor an extension of exclusivity. Letting the Debtor have the entire 2014 golf season to decide on a course of action is not the type of unresolved contingency faced by Chapter 11 debtors, as contemplated by the ninth Adelphia factor, even those in the golfing industry.

As regards to the Motion of NYBDC to Terminate Exclusivity, the Court finds that the 2nd, 4th, and 7th Adelphia factors are relevant, and all of which weigh against granting the creditor's motion seeking termination of the initial 120-day period of exclusivity in this case. The debtor filed for Chapter 11 relief on January 15, 2014, and is well within its initial 120-day period of exclusivity. The Debtor is current in making post-petition payments, albeit such payment obligations are few at this point. The Debtor has not been accused of any misconduct. Weighing those factors, the Court additionally finds that the particular facts in

this case fail to demonstrate the requisite cause or any extraordinary circumstances to warrant termination of the initial exclusivity period. NYBDC has not alleged the Debtor's mismanagement of the bankruptcy case or any other "troubling conduct." Further, NYBDC seeks to terminate exclusivity in order for this "two party dispute" to be quickly resolved as a result of the pressure that is certain to be brought by NYBDC's competing plan. However, the mere fact that NYBDC wants to file a competing plan is not sufficient to establish cause to terminate the exclusivity period. Excel Maritime Carriers, Ltd., 2013 WL 5155040 (Bankr. S.D.N.Y. 2013).

Further, the Court does not find that the termination of exclusivity would move the case forward meaningfully. NYBDC asserts that the Debtor needs the pressure of NYBDC being able to propose a plan, including a liquidating plan with a trustee in control, in order for the Debtor to become motivated to move forward and propose its own plan. However, in enacting 11 U.S.C. §1121, Congress intended "to allow the debtor a reasonable time to obtain confirmation of a plan without the threat of a competing plan." Energy Conversion Devices, Inc., 474 BR 503 (Bankr. Ct. E.D.Mich. 2012). The Debtor acknowledges that a liquidating plan might be the only viable solution, but asks this Court to provide it the opportunity to assess whether a cure plan is possible, by denying the request of NYBDC to terminate exclusivity.

Therefore, in the absence of a showing of extraordinary circumstances, or that the case would move forward meaningfully, coupled with the fact that the Debtor is still within the initial 120-day exclusivity period, the Court denies NYBDC's Motion to Terminate Exclusivity.

As for the Debtor's Cross-Motion to Extend Exclusivity for an additional 120-days, which extension was sought while the initial period of exclusivity is still in place, and without a Plan having been filed, the Court finds that the 1st, 3rd, 5th, and 6th <u>Adelphia</u> factors are relevant, all of which weigh against granting the Debtor's Cross-Motion seeking an additional 120-day period of exclusivity. This is not a large or complex Chapter 11 case. The Debtor has not affirmatively shown any progress toward reorganization or reasonable prospects for filing a viable plan. The Debtor has not offered any explanation of so-called "revamped operations." It apparently has made no effort to engage in negotiations with NYBDC, and has not sought to have a realtor appointed to represent the Debtor, despite the passage of several months since filing this case. In short, the Debtor has seemingly done very little to advance this Chapter 11 case during its first three months under the Court's protection.

The Court also finds that the Debtor failed to meet its burden of cause under § 1121(d) and failed to demonstrate that its requested extension of the exclusivity period would significantly improve progress toward an effective reorganization. The debtor has failed to make any affirmative showing of cause, as it has not provided any supporting evidence on how exactly it proposes to "revamp" operations, how those changes compare to prior years, or the economic impact of those changes.

Therefore, without the Debtor having met its burden of demonstrating the existence of cause to support an extension of the exclusivity period, or how an extension would significantly improve progress toward a viable plan, the Court must deny Debtor's Cross-Motion to Extend Exclusivity.

Therefore, in consideration of relevant factors to be weighed by the Court in ruling on a Motion under § 1121(d) of the Code, as applied to the facts of this case, the Court **DENIES** the Motion of NYBDC to Terminate Exclusivity. The Court further **DENIES** the Cross-Motion of the Debtor to Extend Exclusivity. Counsel for NYBDC is directed to prepare an Order denying the Motion and Cross-Motion for the reasons stated on the record, and incorporating this Bench Decision by reference.

IT IS SO ORDERED.


DATE: April 17, 2014 _____/s/_____

HON. PAUL R. WARREN
UNITED STATES BANKRUPTCY JUDGE